**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **JOSHUA WILSON**, Defendant–Appellant

NO. 16038

(CASE NO. TR23P of 3/20/92)

AUGUST 16, 1993

MOON, C.J., KLEIN, LEVINSON, AND NAKAYAMA, JJ., AND CIRCUIT JUDGE SHIMABUKURO, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY MOON, C.J.

Defendant–appellant Joshua Wilson (Wilson) was charged with one count of driving after his license had been suspended for driving under the influence of intoxicating liquor, in violation of Hawai'i Revised Statutes (HRS) § 291–4.5 (1985) (DUI–license suspension). Subsequent to Wilson entering a plea of not guilty, the district court proceeded directly to bench trial, which resulted in Wilson being convicted as charged.

On appeal, Wilson contends that he was entitled to a jury trial under HRS § 291–4.5 and therefore concludes that the district court erred by not committing his case to circuit court upon the entry of his not guilty plea. Wilson asserts that the district court committed error by proceeding to bench trial without informing him of his right to jury trial or by failing to obtain a knowing and intelligent waiver of his right to jury trial.

We conclude that HRS § 291–4.5 is not constitutionally "serious," and therefore Wilson was not entitled to a jury trial. Consequently, the district court correctly proceeded to bench trial. Accordingly, we affirm the conviction.

## I. BACKGROUND

On June 12, 1991, Wilson was charged with violating HRS § 291–4.5, which provides:

**Driving after license suspended or revoked for driving under the influence of**

**intoxicating liquor; penalties**. No person whose driver's license has been revoked, suspended, or otherwise restricted pursuant to section 286–155 or 291–4 shall operate a motor vehicle upon the highways of this State while such license remains suspended, revoked, or in violation of the restrictions placed on the license. Any person convicted of violating this section shall be sentenced to a term of imprisonment of at least three consecutive days but not more than thirty days, shall be fined not less than $250 but not more than $1,000, and that person's driver's license shall be suspended or revoked for an additional period of one year. The court for good cause may extend imprisonments up to sixty days. The period of suspension or revocation shall commence upon the release of the person from the period of imprisonment imposed pursuant to this section.

When Wilson first appeared in district court on November 12, 1991, he appeared *pro se* and entered a guilty plea. However, because a conviction for violating HRS § 291–4.5 required mandatory jail time, the court entered a plea of not guilty and referred Wilson to the Office of the Public Defender. The court then set the matter for trial in district court at a later date.

On February 21, 1992, Wilson made a second appearance in district court, represented by a public defender. He was charged for a second time and entered a plea of not guilty. Immediately thereafter, the court proceeded with a bench trial.

At trial, the State called the citing officer, Honolulu Police Department (HPD) Officer Among, who testified

that on June 12, 1991, he observed Wilson fail to come to a complete stop at a four–stop intersection. Officer Among stated that he pulled Wilson over and asked for his driver's license. In response, Wilson produced a court–issued permit. HPD's dispatch operator verified that Wilson's driver's license had been suspended for driving under the influence of intoxicating liquor (DUI). Officer Among then cited Wilson for two violations: (1) failing to come to a complete stop; and (2) driving with a DUI–suspended license.

Over defense counsel's objection, the State also introduced two exhibits: Exhibit 1, a certified statement from the Division of Motor Vehicles and Licensing showing that Wilson's license had been suspended; and Exhibit 2, a copy of the certified calendar for the Koolaupoko District on June 7, 1991, indicating Wilson's prior DUI conviction. The State rested its case after defense counsel elected not to cross–examine Officer Among.

Defense counsel thereafter moved for a judgment of acquittal, which the court denied. Following the denial of his motion, defense counsel rested his case without calling any witnesses.

The court took the matter under advisement and ordered both parties to submit memoranda of law and proposed findings of fact and conclusions of law. On March 20, 1992,[1] the court filed its written decision in open court, finding Wilson guilty of violating HRS § 291–4.5. Wilson was sentenced to three days in jail, seventy–five hours of community service, and his license was revoked for one year. This timely appeal followed.

---

[1] The court, on April 6, 1992, amended its decision on a matter unrelated to this appeal.

## II. **DISCUSSION**

Initially, we address a discrepancy in the parties' briefs with respect to the applicable statute. HRS § 291–4.5 was originally enacted in 1985 and later amended in 1990. *See* Act 188, § 8, 1990 Haw. Sess. Laws 399, 411–12. The 1990 amendments provided for increased penalties for one or more prior convictions under that section, and eliminated the court's ability, where good cause was shown, to extend imprisonment for first time offenders to sixty days. The effective date of Act 188 was originally July 1, 1991; however, during the 1991 Special Session, the effective date was postponed to August 1, 1991. *See* Act 1, § 18, 1991 Haw. Spec. Sess. Laws 1061, 1071–72.

Both Wilson's opening brief and the State's answering brief assume that the amended version of HRS § 291–4.5 applies; however, Wilson's reply brief correctly points out that the 1985 version is applicable because Wilson was charged on June 12, 1991, prior to the effective date of the amendment. Because the amendments do not alter the penalties applicable to first time offenders, other than to eliminate the potential sixty–day term of imprisonment, this opinion applies to first time offenders charged under HRS § 291–4.5, as amended, as well as to first time offenders charged under the prior statute. We do not, however, decide whether repeat offenders under the amended statute are entitled to a jury trial.

Wilson contends that the district court should have informed him of his right to jury trial and erred in proceeding to bench trial without first obtaining a knowing and intelligent waiver of his right to trial by jury. Before we reach these issues, however, we must first address

whether Wilson is entitled to a jury trial under HRS § 291–4.5.

The Constitution of the State of Hawai'i provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed[.]" HAW. CONST. art. I, § 14. Although the right to a jury trial is of great importance, we have also recognized that it is not an absolute right. *State v. Kasprzycki*, 64 Haw. 374, 375, 641 P.2d 978, 978 (1982). Specifically, we have held that a defendant charged with a petty crime does not have a constitutional right to a jury trial. *State v. Shak*, 51 Haw. 612, 466 P.2d 422, *cert. denied*, 400 U.S. 930 (1970). The relevant inquiry, then, is whether a first time DUI–license suspension violation is a petty versus serious crime.

In *Shak*, we adopted the analysis used by the United States Supreme Court to determine whether an offense is petty or serious. We stated:

> Under the Federal Constitution, the United States Supreme Court has held that two criteria are relevant in determining whether an offense is petty or serious. The first is whether the offense is by its nature serious. If so, the size of the penalty that may be imposed is only of minor relevance, and the right of trial by jury attaches. *See* **Callan v. Wilson**, 127 U.S. 540 (1888). If the offense is not by its nature serious, however, the magnitude of the potential penalty set for its punishment becomes important, since it is an indication of the ethical judgments and standards of the community. *District of Columbia v. Colts*, 282 U.S. 63 (1930).

*Shak*, 51 Haw. at 614–15, 466 P.2d at 424.

Employing this standard, we then classified a traffic violation with a maximum potential penalty of a fine and/or license suspension or revocation as petty. *Shak*, 51 Haw. at 613–14, 466 P.2d at 424. Later, in *Kasprzycki*, we classified an offense punishable by a fine of not more than $500 or a term of imprisonment not exceeding thirty days as petty. *Kasprzycki*, 64 Haw. at 375, 641 P.2d at 979. We declined to fix a dividing line as to what specific length of imprisonment would constitute a serious offense. However, we noted that the United States Supreme Court in *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974), generally held a sentence of six months as the determinative indicator of a serious offense. *Id.*

The federal analysis, which we adopted in *Shak* and applied in *Kasprzycki*, was later ratified and refined in *State v. O'Brien*, 68 Haw. 38, 704 P.2d 883 (1985). According to *O'Brien*, we must look to three factors to determine whether HRS § 291–4.5 is constitutionally serious or petty: (1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty. *O'Brien*, 68 Haw. at 41–43, 704 P.2d at 885–87.

Under the *O'Brien* test, the first factor we must consider is the traditional treatment of a DUI–license suspension violation and whether this offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury. *O'Brien*, 68 Haw. at 42, 704 P.2d at 886. However, because the DUI–license suspension offense was not indictable at common law, we cannot rely on the first prong of *O'Brien* to determine whether HRS § 291–4.5 is constitutionally serious.

The second factor under *O'Brien* is the gravity of the offense and whether it affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labelling the offense as constitutionally serious.

*Id.* When considering this factor in *O'Brien*, we looked to the legislative pronouncements on the statute governing DUI charges and found that the legislature's commentary reflected an acknowledgment that DUI is a social problem of major proportions. Based on this "statutory scheme," we concluded that the "framework of punishment reflect[ed] the societal belief that drunk driving is a grave and therefore constitutionally serious offense." *Id.* at 43, 704 P.2d at 887.

In our review of the legislative history of HRS § 291–4.5, we find no such language or intention similar to the legislative commentary regarding the DUI statute. The purpose of HRS § 291–4.5 is to provide mandatory penalties, including mandatory terms of imprisonment for those who continue to drive after their licenses have been suspended or revoked for DUI. Sen. Stand. Comm. Rep. No. 904, 1985 Senate Journal at 1294. After hearing testimony on the bill, the legislature found that "the penalty of suspension or revocation of a license to be an effective deterrent to drunk driving." *Id.* However, "to strengthen the deterrent effect," the legislature believed that "stronger sanctions [were] necessary to assure that drivers whose licenses have been suspended or revoked will be kept off our streets and highways." *Id.*

Thus, the legislature found continued driving after a DUI–license suspension or revocation to be serious enough to warrant the imposition of mandatory penalties. However, this finding, without more, does not mean that the legislature concluded that a DUI–license suspension is constitutionally serious. Although we do not condone the actions of DUI–license suspension violators who refuse to abide by their punishment, we cannot say that their continued driving is, in and of itself, as serious and tragic a problem as those who drive or continue to

drive while under the influence of intoxicating liquor. Consequently, having found that the second prong under *O'Brien* does not compel the conclusion that HRS § 291–4.5 is constitutionally serious, we now consider the third and final factor.

The final factor under *O'Brien* focuses on the authorized penalty for the offense. A DUI–license suspension violator is, under HRS § 291–4.5, potentially subject to a term of imprisonment of at least three consecutive days, not to exceed thirty, a fine of at least $250, not to exceed $1000, and the suspension or revocation of his or her driver's license for an additional one year. A court, however, for good cause may extend imprisonment up to sixty days.[2] HRS § 291–4.5.

We recognize that the potential term of imprisonment for a violation of HRS § 291–4.5 is far from the six months which would trigger the requirement for a jury trial under the United States Supreme Court cases. However, we are not only concerned with the term of imprisonment, but also with the gravity of the mix of penalties. *O'Brien*, 68 Haw. at 44, 704 P.2d at 887.

Previously, in *O'Brien* and *State v. Jordan*, 72 Haw. 597, 825 P.2d 1065 (1992), we addressed a mix of penalties similar to the penalties in this appeal. In *O'Brien*, a first time DUI offender was potentially subject to a minimum of forty–eight hours imprisonment, along with the required terms of an alcohol rehabilitation program and license suspension. We found that this mix of penalties "[o]n an individual level . . . involve[d] a disruption of daily life, interruption of livelihood and disaffection from

---

[2] As previously noted, the 1990 legislative amendment of HRS § 291–4.5, which became effective August 1, 1991, eliminated the potential sixty–day term of imprisonment.

other members of the community which [we could not] view as minor." *O'Brien*, 68 Haw. at 44, 704 P.2d at 887.

In response to *O'Brien*, the legislature amended the sentencing provisions for DUI offenders with the intention of clarifying "the length of jail terms that may be imposed." Sen. Conf. Comm. Rep. No. 137, 1990 Senate Journal, at 826. We addressed these amendments in *Jordan*.

In *Jordan*, we were unwilling to find that the 1990 amendments signified a downgrading of the seriousness of the crime such that an offender would not be entitled to a jury trial. *Jordan*, 72 Haw. at 601, 825 P.2d at 1068. This unwillingness was based on *O'Brien* as well as our review of the legislative history of the 1990 amendments, which we believed indicated that the legislature continued to regard DUI as a very serious crime and social problem.

After reviewing our opinion in *Jordan*, the legislature, in 1993, decisively spoke and deemed our view of its perception of the seriousness of first time DUI offenses to be in error. Act 128, § 1, 1993 Haw. Sess. Laws 179, provides in relevant part:

> It is the intent of the legislature that individuals charged with the offense of driving under the influence of intoxicating liquor as a first time offender shall not be entitled to a jury trial.
>
> The purpose of this Act is to reduce the penalties for first time offenders so that there can be no question that, as to first time offenders, the offense is a "petty offense" in the constitutional sense, to which no right to jury trial attaches. . . .
>
> The amended penalty provisions for first time offenders shall be retroactive for all pending first

time offense cases for driving under the influence of intoxicating liquor.

It is the intent of the legislature that the reduced penalties provided for in the Act apply to all pending first offense cases. The legislature further intends that by making the reduced penalties provided for in this Act retroactive to pending cases, it be made clear that such first offenders are not entitled to a jury trial, as the offense is a "petty offense" in the constitutional sense.

Act 128, § 1, 1993 Haw. Sess. Laws 179, 179–80.

Irrefutably, the legislature regards first time DUI offenses as constitutionally "petty" offenses, thereby characterizing the potential mix of penalties faced by a first time DUI offender constitutionally "petty" as well. Moreover, it is now clear that the legislature has always viewed first time DUI offenses as petty. *Cf. Mollena v. Fireman's Fund Insurance Co. of Hawai'i, Inc.*, 72 Haw. 314, 324–25, 816 P.2d 968, 973 (1991) (subsequent legislative amendment construed to clarify original intent regarding statute's meaning).

It therefore follows that if the legislature had always intended the potential mix of penalties faced by a first time DUI offender to be constitutionally "petty," then by promulgating similar penalties for a violation of HRS § 291–4.5, it also intended HRS § 291–4.5 to be constitutionally "petty."

### III. **CONCLUSION**

Based on the foregoing discussion, we hold that HRS § 291–4.5 is not constitutionally "serious," and therefore Wilson was not entitled to a jury trial. Consequently, the

district court correctly proceeded to bench trial. Accordingly, we affirm the conviction.

On the briefs:

*Theodore Y. H. Chinn*, Deputy Public Defender, for defendant–appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for plaintiff–appellee.