883 P.2d 83

STATE of Hawai'i, Plaintiff–Appellee,

v.

DeCarla Liana LINDSEY,
Defendant–Appellant.

Nos. 16622, 16623 and 16624.

Supreme Court of Hawai'i.

Nov. 1, 1994.

allowed an interlocutory appeal from the order pursuant to HRS § 641–1(b) (1985).

William A. Harrison, on the briefs, Honolulu, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Atty. (Jan Lum–Akana, Law Clerk, with her on the brief), Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Following district court bench trials, Decarla Liana Lindsey was found guilty of three separate charges of prostitution in violation of Hawai'i Revised Statutes (HRS) § 712–1200 (Supp.1992). Lindsey filed notices of appeal in each case and we subsequently consolidated the three appeals. The sole issue raised on appeal is whether the right to a jury trial attaches to prostitution offenses.

## I. BACKGROUND

On three separate occasions in 1991, Lindsey was arrested and charged with committing the offense of prostitution. On April 22, 1992, Lindsey was arraigned in district court and requested a jury trial on each charge. The district court granted Lindsey's requests and committed all three cases to circuit court for jury trials.

On May 12, 1992, the State moved to remand the cases to district court for non-jury trials. The circuit court ruled that there was no right to jury trial in prostitution cases and accordingly remanded the cases to district court.

On remand, the district court found Lindsey guilty of all three charges and sentenced her to two thirty-day terms of incarceration to be served concurrently and three fines of $500 each. Lindsey thereafter timely appealed.

## II. DISCUSSION

In *State v. Nakata*, 76 Hawai'i 360, 878 P.2d 699 (1994), we set forth the analysis to be used to determine whether the constitutional right to a jury trial attaches to a particular offense. According to *Nakata:*

> We analyze three factors to determine whether an offense is constitutionally petty or serious: (1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty.

> Under the first factor, we consider the "traditional treatment" of the offense and whether the offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury.

> Under the second factor, we consider whether an offense affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labelling the offense as constitutionally serious. In applying the second factor, the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense.

> Finally, the third factor focuses on the authorized penalty for the offense. We consider not only the maximum possible prison term, but also the possible additional statutory "mix of penalties" that may attach to the offense.

76 Hawai'i at 367, 878 P.2d at 706 (citation and quotation marks omitted).

"[W]e must apply all three factors ... in determining whether an offense is petty or serious." *Id.* at 371, 878 P.2d at 710.

> Primary emphasis, however, must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant

infringement of personal freedom," but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, because incarceration is an "intrinsically different" form of punishment, it is the most powerful indication of whether an offense is "serious."

*Id.* at 368, 878 P.2d at 707 (emphasis omitted) (quoting *Blanton v. City of North Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 1292–93, 103 L.Ed.2d 550 (1989)).

▇ Although "the line of demarcation between petty and serious has been 'ill-defined, if not ambulatory,' *Duncan v. Louisiana,* 391 U.S. [145, 160, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968)], and the courts have drawn it on an *ad hoc* basis," *State v. O'Brien,* 5 Haw.App. 491, 498, 704 P.2d 905, 911, *aff'd,* 68 Haw. 38, 704 P.2d 883 (1985), some guidelines have been established based on the maximum authorized term of imprisonment. If the maximum authorized term of imprisonment exceeds six months, the right to a jury trial attaches as a per se matter. *Blanton,* 489 U.S. at 542, 109 S.Ct. at 1292–93. Furthermore, under the United States Constitution, " 'offenses for which the maximum period of incarceration is six months or less are presumptively 'petty'.' " *Nakata,* 76 Hawai'i at 366, 878 P.2d at 705 (quoting *United States v. Nachtigal,* —— U.S. ——, ——, 113 S.Ct. 1072, 1073, 122 L.Ed.2d 374 (1993)). Although the presumption can theoretically be overcome, *id.,* " 'it is a rare case where "a legislature packs an offense it

deems 'serious' with onerous penalties that nonetheless do not puncture the 6–month incarceration line" '." *Id.* at 366–67, 878 P.2d at 705–06 (quoting *Nachtigal,* —— U.S. at ——, 113 S.Ct. at 1074).[1]

"The United States Supreme Court has interpreted the United States Constitution's sixth amendment right to a jury trial more narrowly than this court has interpreted the Hawai'i Constitution's counterpart, article I, § 14," *id.* 76 Hawai'i at 365, 878 P.2d at 704, however, and we have not adopted the rule that offenses for which the maximum period of incarceration is six months or less are presumptively petty. Thus, in appropriate cases, we have recognized the right to a jury trial under the Hawai'i Constitution for particular offenses even though the maximum authorized terms of imprisonment did not exceed six months. *See, e.g., Nakata,* 76 Hawai'i at 374, 878 P.2d at 713 (holding that right to jury trial attaches to repeat offenses of driving under the influence of intoxicating liquor (DUI) in violation of HRS § 291–4(b)(2) and (3) (Supp.1992) having maximum authorized terms of imprisonment of 60 and 180 days respectively); *see also State v. Jordan,* 72 Haw. 597, 825 P.2d 1065 (1992); *State v. O'Brien,* 68 Haw. 38, 704 P.2d 883 (1985).

On the other hand, except in the most extraordinary circumstances, we do not recognize the right to a jury trial for any offense where the maximum term of imprisonment is not more than thirty days.[2] *See State v.*

1. Similar guidelines have been established based on the magnitude of the maximum authorized monetary penalty. If the maximum authorized monetary penalty when an individual is charged exceeds $5,000, the right to a jury trial attaches as a per se matter. *See State v. Simeona,* 10 Haw.App. 220, 245–46, 864 P.2d 1109, 1121 (1993) ("Article [I], [s]ection 13, of the Hawai'i State Constitution states that: 'In suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved.' ... Defendants in criminal cases should have no less of a constitutional right to a jury trial than parties in civil cases."); *cf.* 18 U.S.C. §§ 19, 3559(a)(9), 3571(b)(7) (1988) (defining an infraction having no authorized term of imprisonment and punishable by a fine not exceeding $5,000 for an individual to be a petty offense). When an organization is charged, the maximum authorized penalty may be higher before the right to a jury trial attaches. *See*

*Moniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975) (holding that labor union did not have a constitutional right to a jury trial before a $10,000 fine could be imposed on it); *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 663 (2d Cir. 1989) (holding that "there is an absolute dollar amount of fines above which the Sixth Amendment entitles all corporations and other organizations to a jury trial ... and that this amount is $100,000."), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990); *cf.* 18 U.S.C. §§ 19, 3559(a)(9), 3571(c)(7) (1988) (defining an infraction having no authorized term of imprisonment and punishable by a fine not exceeding $10,000 for an organization to be a petty offense).

2. Although in *Jordan,* 72 Haw. at 601, 825 P.2d at 1068, this court had held that there was a right to a jury trial for first-time DUI offenses

*Wilson,* 75 Haw. 68, 76–78, 856 P.2d 1240, 1244–46 (holding that right to jury trial does not attach to first offense of driving after license suspended for DUI in violation of HRS § 291–4.5 (Supp.1992) having a maximum term of imprisonment of thirty days), *reconsideration denied,* —— Hawai'i ——, 861 P.2d 735 (1993);[3] *State v. Kasprzycki,* 64 Haw. 374, 375, 641 P.2d 978, 979 (1982) (holding that right to jury trial does not attach to offense of harassment in violation of HRS § 711–1106(2) having a maximum term of imprisonment of thirty days); *State v. Shak,* 51 Haw. 612, 616, 466 P.2d 422, 425 (holding that right to jury trial did not attach to various traffic offenses where imprisonment was not among the authorized penalties), *cert. denied,* 400 U.S. 930, 91 S.Ct. 191, 27 L.Ed.2d 190 (1970); *see also O'Brien,* 68 Haw. at 44, 704 P.2d at 887 (suggesting that if maximum penalty for a third DUI offense were "imprisonment for no longer than one month, we would perhaps be persuaded . . . that DUI is not a serious offense in the constitutional sense"); *but cf. State v. Simeona,* 10 Haw.App. 220, 864 P.2d 1109 (1993).[4]

In *Kasprzycki,* the entire analysis consisted of the following:

> The offense . . . has been classified by the legislature as a petty misdemeanor, the

penalty for which is either a fine of not more than $500, or a sentence of imprisonment not exceeding 30 days, or both. The defendant was not, therefore, entitled to a jury trial.

64 Haw. at 375, 641 P.2d at 979 (per curiam) (citations omitted); *see also Wilson,* 75 Haw. at 74, 856 P.2d at 1243 (citing *Kasprzycki* holding with approval); *O'Brien,* 68 Haw. at 41–42, 704 P.2d at 885 (same).

■ Therefore, we now adopt a rule that if the maximum authorized term of imprisonment for a particular offense does not exceed thirty days, it is presumptively a petty offense to which the right to a jury trial does not attach.[5] The presumption can be overcome only in extraordinary cases when consideration of the other *Nakata* factors, i.e., any possible additional statutory "mix of penalties," the treatment of the offense at common law, and the gravity of the offense, unequivocally demonstrates that society demands that persons charged with the offense at issue be afforded the right to a jury trial.

■ The maximum authorized penalty for a prostitution offense is a $500 fine and a thirty day term of incarceration. HRS § 712–1200(4) (Comp.1993).[6] Because the

---

having a maximum authorized term of imprisonment of thirty days, that portion of the holding in *Jordan* was overruled in *Nakata.* 76 Hawai'i at 374, 878 P.2d at 713.

3. In *Wilson,* the court in fact held that the right to a jury trial did not attach to a driving after license suspended for DUI offense even under the pre–1990 amendment version of the statute when the sentencing court was authorized to "extend imprisonments up to sixty days." 75 Haw. at 76–78, 856 P.2d at 1244–46.

4. In *Simeona,* the Intermediate Court of Appeals held that the right to a jury trial attaches when an individual is charged with violating the mooring prohibition set forth in Hawai'i Administrative Rules § 19–62–17(a)(1), where the maximum authorized penalties are a $10,000 fine and the deprivation of "the privileges of operating or mooring any vessel in state waters for a period of not more than two years." 10 Haw.App. at 245, 864 P.2d at 1120–21. Although the right to a jury trial attached despite the fact that imprisonment was not among the authorized penalties, because the right attached by virtue of the magnitude of the maximum authorized monetary penalty, *see supra* note 1, the case is of little relevance to our analysis in the instant case.

5. This is not to say that the right to a jury trial presumptively attaches if the maximum authorized term of imprisonment exceeds thirty days. Rather, if the maximum authorized term of imprisonment for an offense is more than thirty days but not more than 180 days, no presumption applies. For those offenses, all of the *Nakata* factors must be considered together to determine whether the right to a jury trial attaches.

6. HRS § 712–1200(4) (Comp.1993) provides:

> (4) A person convicted of committing the offense of prostitution shall be sentenced as follows:
> (a) For the first offense, when the court has not deferred further proceedings pursuant to chapter 853, a mandatory fine of $500 and the person may be sentenced to a term of imprisonment of not more than thirty days; provided, in the event the convicted person defaults in payment of the $500 fine, and the default was not contumacious, the court may sentence the person to perform services for the community as authorized by section 706–605(1).
> (b) For any subsequent offense, a fine of $500 and a term of imprisonment of thirty days, without possibility of deferral of further proceedings pursuant to chapter 853 and with-

maximum authorized term of imprisonment does not exceed thirty days for either first or repeat prostitution offenses,[7] there is a presumption that the constitutional right to a jury trial does not attach to any prostitution offense.

Consideration of the other *Nakata* factors fails to overcome the presumption. Aside from imprisonment, the only other statutorily authorized penalty is a $500 fine. A possible $500 fine is insufficient in and of itself to trigger the right to a jury trial, *see supra* note 1, and is likewise insufficient to overcome the presumption discussed above.

We look next to the treatment of the offense at common law. This factor does not support Lindsey's argument because "the act of prostitution, unattended by circumstances making it a public nuisance, was not an offense indictable at common law, so as to entitle a person accused thereof to a trial by jury...." *Bailey v. United States,* 98 F.2d 306 (D.C.Cir.1938).

Finally, we consider the gravity of the offense. Lindsey argues that the fact that the legislature imposed mandatory penalties of $500 for all prostitution offenses and thirty days imprisonment for repeat offenses indicates that prostitution is a serious offense. Although the legislature did find prostitution offenses "to be serious enough to warrant the imposition of mandatory penalties[ ], this finding, without more, does not mean that the legislature concluded that [prostitution]

is constitutionally serious." *Wilson,* 75 Haw. at 75, 856 P.2d at 1244.

In order to determine whether the legislature in fact concluded that prostitution is constitutionally serious, we must examine the legislative history because "the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense." *Nakata,* 76 Hawai'i at 366, 878 P.2d at 706.

Although there is some indication in the legislative history that prostitution is a serious offense, *see* Hse.Stand.Comm.Rep. No. 1169, in 1993 House Journal, at 1468 ("[T]here are others, many of them youngsters, who may be charged as prostitutes and who have engaged in the activity because of drug problems, extreme poverty, or other mitigating circumstances. [¶] For these individuals, unlike the hardened professional, as well as for certain customers of prostitutes, *a conviction under the present law for engaging in prostitution is a devastating and humiliating stigma which will last forever.*" (Emphasis added.)),[8] for the following reasons, we cannot conclude that the legislative history unequivocally demonstrates that society deems prostitution so grave an offense that it demands that individuals charged with prostitution be afforded the right to a trial by jury: (1) when the Hawai'i Penal Code was adopted the legislature was somewhat reluc-

out possibility of suspension of sentence or probation.

For the purpose of this section, if the court has deferred further proceedings pursuant to chapter 853, and notwithstanding any provision of chapter 853 to the contrary, the defendant shall not be eligible to apply for expungement pursuant to section 831–3.2 until four years following discharge. A plea previously entered by a defendant under section 853–1 for a violation of this section shall be considered a prior offense.

Although this version of HRS § 712–1200(4) was not in effect at the time that Lindsey was arraigned or tried, the legislature expressly made the 1993 amendments "retroactive for all pending cases." Act 130, § 6, 1993 Haw.Sess.Laws 183, 185. Moreover, the 1993 amendments did not in any way alter the maximum authorized penalty. *See* HRS § 712–1200(4) (Supp.1992).

7. The fact that the thirty day term of imprisonment is *mandatory* for repeat offenses does not

change the fact that the maximum authorized term of imprisonment is thirty days. That the legislature would impose a mandatory sentence may be considered, however, in analyzing the gravity of the offense. *See O'Brien,* 5 Haw.App. at 501–02, 704 P.2d at 912–13.

8. The statement quoted in the text addressed the reasons that deferred pleas under HRS Chapter 853 should be allowed in first-offense prostitution cases. Thus, although the statement appears to indicate that the legislature felt that prostitution was a serious offense, the fact that legislature amended HRS § 712–1200 to specifically allow for deferred pleas in first-offense prostitution cases, *see* Act 130, § 1, 1993 Haw. Sess.Laws 183, also lends support to the opposite conclusion. *See State v. Tom,* 69 Haw. 602, 604, 752 P.2d 597, 598 (1988) (noting that allowing deferred pleas for an offense could be inconsistent with a conclusion that the offense is serious).

tant to continue to criminalize prostitution and reduced the offense to a petty misdemeanor at that time, *see* Commentary to HRS § 712–1200 (1985) [9]; (2) the legislature was concerned primarily not with prostitution itself but with the secondary effects of prostitution when it amended HRS § 712–1200 to provide for mandatory fines and imprisonment, *see* Sen.Conf.Comm.Rep. No. 15, in 1981 Senate Journal, at 907 ("Your Committee believes that some form of mandatory imprisonment is necessary to curb rising crimes of violence and property crimes, many of which occur as a consequence of the offense of prostitution."); Hse.Conf.Comm. Rep. No. 25, in 1981 House Journal, at 908; Hse.Stand.Comm.Rep. No. 631, in 1981 House Journal, at 1205; *see also* Hse.Stand. Comm.Rep. No. 1169, in 1993 House Journal, at 1468 ("Your Committee recognizes that the adoption of mandatory penalties for prostitution was an attempt to curb the rising toll of violence and property crimes associated with the offense of prostitution."); and (3) the legislature clearly feels that prostitution itself is less serious than other related offenses. *See* comments of Representative Say, *reprinted in* 1981 House Journal, at 765 ("My support of this Conference Draft is not an attempt to dictate morality. Instead, prostitution as a petty misdemeanor is unmistakable in tandem with *much more serious crimes of violence and against property.*

If we remain negligent of this tandem relationship, we are encouraging, not discouraging, commission of more serious crimes." (Emphasis added.)); Hse.Stand.Comm.Rep. No. 1169, in 1993 House Journal, at 1468 ("Your Committee notes that an anomaly has developed with regard to the offense of prostitution, in that *the more serious offenses of promoting prostitution in the first, second, and third degree* are eligible for deferred pleas under Chapter 853, yet *the lesser offense of prostitution* is not." (Emphasis added.)).

### III. CONCLUSION

Because the maximum authorized term of imprisonment for a prostitution offense is thirty days, prostitution is presumptively a petty offense to which the right to a trial by jury does not attach. Consideration of the other *Nakata* factors fails to overcome the presumption. Therefore, we hold that Lindsey did not have a right to a jury trial on the charges against her for prostitution. Accordingly, we affirm.

---

9. History has proven that prostitution is not going to be abolished either by penal legislation nor the imposition of criminal sanctions through the vigorous enforcement of such legislation. Yet the trend of modern thought on prostitution in this country is that "public policy" demands that the criminal law go on record against prostitution. Defining this "public policy" is a difficult task. Perhaps it more correctly ought to be considered and termed "public demand"—a widespread community attitude which the penal law must take into account regardless of the questionable rationales upon which it is based.
. . . .
. . . . Making prostitution a criminal offense is one method of controlling the scope of prostitution and thereby protecting those segments of society which are offended by its open existence. This "abolitionist" approach is not

without its vociferous detractors. There are those that contend that the only honest and workable approach to the problem is to legalize prostitution and confine it to certain localities within a given community. While such a proposition may exhibit foresight and practicability, the fact remains that a large segment of society is not presently willing to accept such a liberal approach. Recognizing this fact and the need for public order, the Code makes prostitution and its associate enterprises criminal offenses.
. . . .
. . . . In the area of penalty, previous law imposed a fine of not more than $1,000 or imprisonment of not more than one year, or both. The Code lowers these maxima to $500 and 30 days, respectively, by making the offense a petty misdemeanor. . . .
Commentary to HRS § 712–1200 (1985).